THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Defendant. | CASE NO. C13-1839-JCC<br><br>ORDER |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 28, 48). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Plaintiffs' motion (Dkt. No. 28) and GRANTS Defendant's motion (Dkt. No. 48) for the reasons explained herein.

I.  BACKGROUND

The objective of the Clean Water Act ("the Act") "is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act requires states to develop water quality standards, which "define[] the water quality goals of a water body, or portion thereof, by designating the use or uses to be made of the water and by setting criteria necessary to protect the uses." 40 C.F.R. § 130.3. States must review their water quality standards at least once every three years and submit any new or revised standards for the

approval of the Administrator of the Environmental Protection Agency ("EPA"). 33 U.S.C. § 1313(c); 40 C.F.R. § 131.21. This process is commonly known as the "triennial review." The EPA must approve or disapprove the standards. 33 U.S.C. § 1313(c)(3). If it disapproves the submitted standards, then it must eventually "promptly prepare and publish proposed regulations setting forth a revised or new water quality standard." 33 U.S.C. § 1313(c)(4). Even if a state has not submitted standards for approval, the EPA may *sua sponte* determine that a new or revised standard is necessary, a determination that also triggers its mandatory duty to publish proposed regulations. *Id.*

This case concerns the fish consumption rate established by the State of Washington. The fish consumption rate reflects one use of the waters, and is a component of the water quality standards. *See* 33 U.S.C. § 1313(c)(2)(A); 40 C.F.R. § 131.3(i); (Dkt. Nos. 28 at 7, 48 at 10.) Plaintiffs contend—and the EPA does not dispute—that Washington's current fish consumption rate underestimates the amount of fish consumed by Washington residents. The practical effect of this is that fish and shellfish contain more toxins than they should given how much fish some people eat. Washington State's Department of Ecology ("Ecology") is currently in the process of revising the state's human health criteria using a revised fish consumption rate. (Dkt. No. 49.)

Although this case arose out of concern about the fish consumption rate, the actual rate is not at issue. Instead these summary judgment motions implicate a narrow question about the legal effect of an email and letters sent to Ecology by individuals at the EPA. Plaintiffs contend that these communications constitute a legal determination that the fish consumption rate is inadequate. And having made such a determination, the EPA has a mandatory statutory obligation to promptly promulgate revised standards. Defendant argues that there has been no statutorily relevant determination and that this Court therefore lacks jurisdiction.

## II.     DISCUSSION

### A.     Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the case's outcome. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* at 49. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the nonmovant's favor. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

### B. The Clean Water Act

Federal jurisdiction exists pursuant to 33 U.S.C. § 1365(a), which provides that "any citizen may commence a civil action . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). Absent the violation of a non-discretionary duty, this Court lacks jurisdiction. *See Northwest Envtl. Advocates v. United States Envtl. Prot. Agency*, 268 F.Supp.2d 1255, 1262 (D. Or. 2003) ("Because the condition precedent for bringing a citizen suit has not been met, this court lacks jurisdiction over plaintiff's second claim for relief.").

The source of any non-discretionary duty in this case is 33 U.S.C. § 1313(c)(4). That provision states:

> The Administrator shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved—
>
> (A) if a revised or new water quality standard submitted by such State under paragraph (3) of this subsection for such waters is determined by the Administrator not to be consistent with the applicable requirements of this chapter, or
>
> (B) in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of this chapter.
>
> The Administrator shall promulgate any revised or new standard under this

paragraph not later than ninety days after he publishes such proposed standards, unless prior to such promulgation, such State has adopted a revised or new water quality standard which the Administrator determines to be in accordance with this chapter.

33 U.S.C. § 1313(c)(4).

A § 1313(c)(4)(B) determination triggers the duty to "promptly prepare and publish proposed regulations." The provision uses the mandatory language of "shall" and there is no dispute that the duty is mandatory once such a determination is made. Plaintiffs identify four letters and one email that they argue are constitute negative determinations for purposes of this provision. (Dkt. No. 28 at 11–12.)

### 1. November 10, 2010 Email

Jannine Jennings, the Unit Manager of EPA Region 10's Water Quality Standards Unit, sent an email to Susan Braley at Ecology on November 10, 2010. Ms. Jennings wrote:

> I wanted to let you know that we will be sending a letter as part of your triennial review request stating EPA's desire for WA to move forward with revisions to the human health criteria in order to incorporate a higher fish consumption rate. I doubt this is a surprise but wanted to let you know in advance. Also, if there are other things which you would find helpful to hear from EPA during this time, please let us know.

(Dkt. No. 29, Ex. E.)

### 2. December 16, 2010 Letter

One month letter, Ms. Jennings followed her email with a letter containing comments on Washington's Surface Water Quality Standards Triennial Review. (Dkt. No. 29, Ex. F.) In that letter, Ms. Jennings wrote: "EPA urges Ecology to make the revision of Washington's human health criteria the most important priority in this Triennial Review." (*Id.*) She noted that "we are available and willing to work closely with you throughout your human health criteria update process." (*Id.*) The letter also specifically addressed the fish-consumption rate, giving the background of the human health criteria and stating: "EPA believes that a fish consumption rate of 6.5 grams per day is not reflective of fish and shellfish consumers in the State of Washington." (*Id.*) She recommended that Ecology "examine the most recent EPA criteria

ORDER
PAGE - 4

documents as well as other technical developments and studies to determine an appropriate fish consumption rate that would result in criteria protective of the State's designated uses." (*Id.*)

### 3. January 17, 2012 Letter

In September 2011, Ecology issued a draft report related to the state's fish-consumption rate. Ms. Jennings wrote another letter on January 17, 2012, "provid[ing] the [EPA's] general comments on [Ecology's] process to undergo revisions to the state's fish consumption rate." (Dkt. No. Ex. G.) Ms. Jennings noted that Ecology's document "provides a strong framework for your upcoming process to choose a fish consumption rate that more accurately reflects the fish and shellfish consumed by people in Washington." (*Id.*) Two concluding paragraphs stated:

> To reiterate, EPA believes the approach for developing a revised fish consumption rate should be based on current scientific information and local/regional data. The initial approach put forth in the draft report is aligned with this thinking. While we understand the need for continued coordination with your stakeholders and the Tribes, we encourage you to quickly incorporate this information into your rulemaking process and move forward with adopting revised criteria. . . .
>
> EPA urges Ecology to continue the process of revising Washington's human health criteria in a timely manner. However, EPA recognizes that several key questions still need to be decided. . . . Nonetheless, EPA believes the information is currently available to make decisions on these matters and requests Ecology to quickly move through the process necessary to do so. EPA remains committed to working with Ecology, the Tribes and Washington's stakeholders to facilitate the adoption of water quality criteria that reflect appropriate fish consumption rates for Washington's waters and are protective of human health.

(*Id.* at 3.)

### 4. September 6, 2012 Letter

On September 6, Dennis McLerran, the Regional Administrator, wrote a letter to Ecology's Director. This letter stated: "The surveys demonstrate that tribal and other high fish consuming residents are eating fish at rates significantly higher than the current default rates." (Dkt. No. 29, Ex. H.) He wrote:

> It is crucial that the Department of Ecology continue to make progress in adopting

human health criteria that incorporate scientifically sound data, including current information regarding realistic fish consumption rates. Our understanding is that Ecology is committed to updating water quality standards based on the best available science. The best available science now in-hand demonstrates that current standards are not based on realistic consumption rates for high fish consumers. . . . Your July 16 letter indicates a commitment to commencing the rule making process for surface water quality standards this month. We will be monitoring that process closely and are supportive of its timely completion. . . . I look forward to working together on this critically important issue.

### 5.   June 21, 2013 Letter

The last communication that Plaintiffs identify was sent on June 21, 2013, again from Mr. McLerran to Ecology's Director.[1] (Dkt. No. 29, Ex. I.) This letter for first time cited the relevant statutory sections. The letter was apparently in response to a budget proviso in a state bill that Mr. McLerran thought might "have significant impacts on Ecology's process and progress" in proposing a draft rule, and it "reiterate[d] [EPA's] perspectives on several technical issues that are relevant to [Ecology's] work." (*Id.*) Toward the end of the letter, Mr. McLerran noted that the EPA had the authority to amend the human health criteria:

> However, should Washington's process be unnecessarily delayed, the EPA has the authority to amend the NTR human health criteria for Washington, which the EPA originally promulgated in 1992. Pursuant to Clean Water Act Section 303(c)(4)(B) and 40 C.F.R. § 131.22(b), the EPA promulgated the NTR for states not complying with Section 303(c)(2)(B) of the Clean Water Act . . . . As previously noted, since 1992, several national, regional, and local surveys have been conducted that provide scientifically sound information that fish consumption levels are considerably higher than 6.5 grams per day in Washington.

(*Id.* at 3.) Four months later, Plaintiff filed this lawsuit.

### C.   Analysis

This Court has jurisdiction only if the Administrator has failed to perform a non-discretionary act or duty. *See* 33 U.S.C. § 1365(a) ("The district courts shall have jurisdiction . . . to order the Administrator to perform such act or duty . . . ."). Here, Plaintiffs contend that each of

---

[1] Ecology's Director had changed between September 2012 and June 2013.

ORDER
PAGE - 6

these communications constitutes a § 1313(c)(4)(B) determination and thus triggered the Administrator's nondiscretionary duty to promptly propose rules. (Pl. Resp. at 2–3; Dkt. No. 55 at 6–7, n.1.) The Court disagrees.

First, these determinations were not made by the Administrator. The court in *CORALations v. United States Envtl. Prot. Agency*, 477 F.Supp.2d 413 (D. Puerto Rico 2007), considered a related question.[2] In that case, Puerto Rico submitted water-quality standards for review.[3] The Region's Water Management Division director sent a letter disapproving certain standards. (Dkt. No. 28, Ex. A at 10.) The EPA argued that only the Acting Regional Administrator could disapprove standards, *see* 40 C.F.R. § 131.22(a) (2003), so this letter from a "staff-level" employee did not constitute a communication from the "Administrator" for purposes of 33 U.S.C. § 1313. The court recognized "that case law regarding approval by a subordinate without the specific delegation of power is uncommon." (*Id.* at 10.) Even so, the court concluded that the tone and the wording of the communications meant that the letter-writer was representing the Administrator and the letter therefore triggered the EPA's duty to publish revised standards. (*Id.*) In a related order denying a motion to dismiss, the court concluded that the term "Administrator" was not intended to have a strict application and that discovery was necessary to determine whether the duty was delegated. (Dkt. No. 28, Ex. B.) The *CORALations* order also pointed to *Idaho Conservation League v. Browner*, 968 F. Supp. 546 (W.D. Wash. 1997), in which the EPA had stipulated to the fact that a letter from the Acting Director Office of Water constituted final disapproval under § 1313(c)(3). *Idaho Conservation League*, 968 F. Supp. at 548 (letter explicitly stated that it was an "official notification").

---

[2] The court issued several orders in that case, two of which were referred to in the published opinion and provided with Plaintiffs' summary-judgment motion. (Dkt. No. 28, Exs. A, B.)

[3] The parties disputed whether Puerto Rico should be deemed to have formally submitted revisions to the EPA. (Dkt. No. 28, Ex. A at 8.) The Court concluded that Puerto Rico's letter was a formal submission, so that aspect of its analysis is irrelevant here.

Plaintiffs rely heavily on these cases. The *CORALations* court, however, was considering the issue from the standpoint of analyzing the significance of a letter written in response to submitted standards. *CORALations*, 477 F.Supp.2d at 417–18 (Dkt. No. 28, Ex. A.) There are several reasons to apply different reasoning in evaluating the EPA's duty under § 1313(c)(4)(B). First, under 33 U.S.C. §§ 1313(c)(3) and (c)(4)(A), the Administrator has a mandatory duty either to approve or disapprove the standards that a state has submitted to the EPA. The power to do so has been delegated by the EPA Administrator to the Regional Administrators for each of the EPA Regions. *See* EPA Delegations Manual, section 2-10, (Dkt. No. 49, Ex. A); 40 C.F.R. § 131.20 (requiring the State to submit the results of the review "to the Regional Administrator for review and approval"); 40 C.F.R. § 131.21(b) (describing "[t]he Regional Administrator's approval or disapproval of a State water quality standard"). By contrast, the relevant power under § 1313(c)(4)(B) is a discretionary power to determine *sua sponte* that a new or revised standard is required. *See, e.g.*, *Northwest Envtl. Advocates v. United States Envtl. Prot. Agency*, 268 F.Supp.2d 1255 (D. Or. 2003) (Oregon never submitted a revised temperature criterion so the EPA had no mandatory duty but instead had discretion to decide whether to review the existing standard under 33 U.S.C. § 1313(c)(4)(B)); 40 C.F.R. § 131.22(a)–(b) (using "may" as opposed to "shall" in describing power to make *sua sponte* determination). This discretionary power has not been delegated to the Regional Administrators nor has it been frequently exercised. *See* 40 C.F.R. § 131.22(a)–(b) (Regional Administrator disapproves proposed changes under § 131.22(a), but only the Administrator may propose a regulation "upon determining such a standard is necessary to meet the requirements of the Act"). There have been occasions when the power has been delegated, but the Administrator has done so clearly and explicitly. (Dkt. No. 48, Ex. 2, Exhibits; Dkt. No. 57 at 5–6.)

Moreover, even assuming that the tone of the letters can indicate whether they were meant as official determinations, the letters in this case evince no such intent. These communications explicitly endorse and express support for the state's ongoing revision

ORDER
PAGE - 8

process—a fact that is particularly significant against the backdrop of discretion inherent in deciding whether to make a determination under § 1313(c)(4)(B). They clearly intend to offer guidance to the state during the state's revision process, and the only mention of the relevant statute is in the context of *not* invoking any statutory power. (Dkt. No. 29, Ex. I.) Plaintiff argues that interpreting the letters in this manner means that the EPA can "effectively excuse itself from its mandatory obligations to promulgate a standard." (Pl. Resp. at 8; Dkt. No. 55 at 12.) But there is no mandatory obligation until a determination has been made, and the EPA's ability to "excuse itself" is inherent in the discretion to decline to make a determination.

Also significant is that neither the letters nor the Plaintiffs identify specific water-quality standards that are deficient. The fish-consumption standard undeniably implicates certain human health criteria and certain water-quality standards. Yet the communications identify no "revised or new water quality standard," reinforcing the conclusion that these are not official determinations regarding the standards for purposes of 33 U.S.C. § 1313(c)(4)(B). Indeed, although Plaintiffs emphasize that it is not "likely [that] EPA is confused about what human health criteria are based on the health consumption rate," at no point do Plaintiffs actually identify the specific water-quality standards about which EPA has allegedly made a statutory determination.[4]

Finally, even assuming that a determination has been made, the Court disagrees with Plaintiffs' characterization that there has been a delay of over three years such that the EPA has failed to act "promptly." The only letter mentioning the relevant statutory provision is the June 2013 letter. Even assuming that this letter constituted a statutorily relevant determination, Plaintiffs cite no authority—nor has this Court found any—suggesting that failing to propose standards within four months of that determination would necessarily be failing to act

---

[4] Plaintiff briefly suggests in reply that "[t]he fish consumption rate itself is a water quality standard subject to EPA disapproval," but the supporting reasoning recognizes that it is a "use" and a "necessary component." (Dkt. No. 55 at 9.)

"promptly."[5] (Dkt. No. 28 at 19–21 (citing caselaw suggesting that delays ranging from nineteen months to three years were not acting promptly)). Absent a failure to promptly propose regulations, the EPA has shirked no mandatory duty and this Court lacks jurisdiction.

## III.     CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion (Dkt. No. 28) and GRANTS Defendant's motion (Dkt. No. 48). This matter is DISMISSED without prejudice for lack of subject matter jurisdiction.

DATED this 18th day of September 2014.

_John C. Coughenour_
John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[5] It is well-established that jurisdiction is determined at the time a complaint is filed. *See, e.g.*, *Chesapeake Bay Foundation*, 769 F.2d 207 (4th Cir. 1985) (jurisdiction determined at time of complaint).

ORDER
PAGE - 10